## TOM HOLLIS v. STATE.

### No. 2267.   Decided February 5, 1913.

**1.—Burglary—Evidence—Description of Keys.**

Where, upon trial of burglary, the circumstances indicated that the alleged room had been unlocked, there was no error in admitting testimony describing certain keys found in defendant's possession, one of which exactly fitted the keyhole of the door of the said room, and it was not necessary to exhibit said keys to the jury as the best evidence; besides, it was shown that the keys were lost.

**2.—Same—Breaking—Sufficiency of the Evidence.**

Under Article 1308, Penal Code, the unlocking and opening of a locked door and an entry thus effected, where the intent to steal is shown, or an actual theft is shown, this would be a breaking under the law, even though the burglar, after thus effecting an entry and committing the theft, in leaving should again close and lock the door and leave it in exactly the same condition as before he entered, and where such a state of facts were shown, the same was sufficient to sustain a conviction for burglary.

**3.—Same—Charge of Court—Requested Charges.**

Where, upon trial of burglary in the daytime, the court fully charged the law as applicable to the facts and also submitted the requested charges which were in point, and the evidence amply supported the conviction, there was no error.

Appeal from the District Court of Travis.  Tried below before the Hon. George Calhoun.

Appeal from a conviction of burglary in the daytime; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*A. S. Phelps*, for appellant.—Upon question of actual breaking: Strickland v. State, 78 S. W. Rep., 689; Bird v. State, 87 S. W. Rep., 146; Johnson v. State, 88 S. W. Rep., 813; Martinus v. State, 47 Texas Crim. Rep., 528; Bates v. State, 50 Tex. Crim. Rep., 568, 99 S. W. Rep., 551; Jones v. State, 50 Tex. Crim. Rep., 100, 96 S. W. Rep., 44.

On question of admitting description of keys: Mann v. State, 27 Texas Crim. App., 580; Field v. State, 24 Texas Crim. App., 422; Morgan v. State, 25 id., 498.

*C. E. Lane*, Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was convicted of burglary and his penalty fixed at four years in the penitentiary.

The evidence without contradiction shows that on the early morning of June 6, 1912, J. G. Franklin, who occupied a room in a house on the corner of Colorado and West 6th streets in the City of Austin, where he slept and kept his clothing, put down and fastened the shutters to all of the windows of the room and closed and locked the door, taking the key with him, and that later in the evening in the daytime

of the same day he returned to his room and upon going therein found that his room had been entered; that the door to his wardrobe which he had also closed and locked was open, his bureau drawers open and his clothes scattered about and that a certain suit of clothes had been taken out of his wardrobe. He described this suit of clothes; that the entrance to his room was in the front door and up the stairway. It seems that his room was on the second floor. He knew that he left this suit of clothes in his wardrobe that morning and saw them there and when he got back that evening they had been taken away. He saw nothing wrong with the doors or windows when he returned and found that the suit of clothes was gone and his room had been entered and his clothes disarranged. The shutters to the windows were fastened inside. The windows were up. The blinds could not be opened from the ouside without a wire. That they catch with a hook. As soon as Franklin saw what had been done and missed his suit of clothes he called an officer who began an investigation and a search for the suit of clothes.

Joe Levi, a tailor, testified that appellant was in his place of business in Austin on the morning of June 6th and examined and talked about then buying from him a certain suit of clothes; that that same evening between 4 and 5 o'clock the appellant drove down in a surrey, drawn by a white horse, to his shop and he, supposing that he came to buy the suit he was looking at in the morning, asked him if he wanted the suit. Appellant replied that he wanted to make a trade with him and then got a bundle from the buggy or surrey, took it in Levi's shop, unwrapped it and took out a suit. Then told Levi that he wanted to make a trade with him and pay him some boot. He wanted Levi to take the suit of clothes he had and he, appellant, then pay him boot between Levi's suit and the one he offered. The suit that appellant then got out of this buggy or surrey was identified as Franklin's suit of clothes taken from his room that day, which was afterwards recovered. Levi said the suit appellant then had was a real good suit and he said to appellant, ''that ain't your suit,'' because he saw the suit was for a short man and the appellant was a tall man. Appellant replied that it was his. Levi insisted that it was not because it did not fit him and he could not use it. Then he admitted that it was not his but that it belonged to a boy who worked with him. He asked appellant then where he worked and he told him he worked on West 6th street. They did not trade and appellant left, taking Franklin's suit of clothes with him. Before Levi closed his shop for the evening Mr. Starr, one of the policemen, came and had a conversation with him. Afterwards Starr showed him a suit of clothes which was the suit that appellant had and offered to trade to him on the evening of June 6th.

Mr. Starr, this policeman, testified that he was called to Franklin's place on the evening of June 6th and made an investigation there. He further testified that after making an investigation he

hunted for appellant; that he knew where he lived which was at 11th and Lavaca streets in Austin at Mrs. Butler's place; that appellant's room at Mrs. Butler's was the servant's room up over the garage or carriage room; that he went to that room but did not at first see appellant; that he was hunting for the man who was described as the one who drove the said gray horse and surrey; that he found the gray horse and surrey at Mrs. Butler's; that someone had been occupying this servant's room over the garage or carriage room and clothes and things were in there. The witness looked through the room and found a hole in the mattress and three keys stuck back in there; that one of these keys would lock and unlock Franklin's room door, as though it was made for it. The keys were in a little hole in the mattress stuck back in it; he did not then arrest appellant; he was then only investigating; that he had some talk with the appellant before he arrested him. The next day, June 7th, after he arrested appellant, finding out that his mother lived in the east part of Austin, he went out to her house and there found and recovered Franklin's suit of clothes which were thoroughly identified by Franklin as the clothes stolen from him the day before and also identified by Levi as the clothes appellant showed to him and tried to trade to him on the evening of the 6th of June. After appellant was arrested, Mr. Starr, the policeman, transferred him to the custody of the constable and he was then placed in the county jail. At this time he turned over the three keys he had found in the appellant's room at Mrs. Butler's. The State then introduced the various officers and witnesses who would have come into possession of said keys, but all of them, though having searched for the keys, could not find them. The State, by its testimony on this line, probed every source where said keys ought or should have been but could not locate them. The State further proved that the appellant took the said suit of clothes to his mother's on the evening of the theft and left them there, where they were recovered the next morning.

The court gave a full and accurate charge, submitting for a finding every issue raised in behalf of the appellant and the jury found every issue against him. He required, in the definition of burglary, that a *breaking* must be done and defined breaking as follows: "By the term 'breaking' is meant the entry must be made with actual force. The slightest force, however, is sufficient to constitute breaking; it may be by lifting the latch of a door that is shut, or by the opening of a door that is shut and locked, or by raising a window." In another paragraph, he told the jury that the entry must be made by force with intent to commit the crime of theft and that they must be satisfied, from the evidence, beyond a reasonable doubt, that the entry was so made by force directly applied to the house and with the intent to commit theft. He also correctly charged on circumstantial evidence. He then, in another paragraph, in submitting the case to the jury for a finding, required them to believe that the appellant

did then and there unlawfully, in the daytime, by force break and enter the said Franklin's house, etc.

Appellant has quite a lengthy bill of exceptions about the keys found and testified to by the policeman. The court, in approving the bill, stated: "I am only approving it (the bill) to the effect that an objection was made to the testimony in regard to the keys as set out in the bill, and the State then offered evidence showing that the keys testified about had been lost or misplaced as set out in the statement of facts, and after said testimony had been offered the court overruled defendant's objections to which defendant excepted." As we understand the bill as qualified, it in effect shows that when the witness Starr testified that he found the three keys stuck in the mattress in appellant's room at Mrs. Butler's servant's house, that the appellant objected to any such testimony or describing about what the keys were or that one of them would unlock Franklin's door, etc., claiming that the keys would be the best evidence. The bill shows that the court first excluded this testimony until, as stated in the qualification, the State showed that the keys had been lost or misplaced and after that was shown he admitted the proof about the officer finding the keys and where he found them and that one of them would unlock Franklin's door as if it had been made for that purpose. It is our opinion that this testimony, under the circumstances, was clearly admissible and that the court did not err in admitting it. We think the testimony would have been clearly admissible whether the keys were shown to have been lost or not.

The only other contention of appellant is that the evidence is insufficient to sustain the verdict. The principal point on which it seems, appellant makes this contention is that the evidence fails to establish that there was any *breaking* such as is contemplated by the statute, to constitute burglary. The statute itself, Penal Code, Article 1308, defines what is meant by breaking: "That the entry must be made with actual force. The slightest force, however, is sufficient to constitute breaking; it may be by lifting the latch of the door that is shut, or by raising a window, the entry at a chimney, or other unusual place, the introduction of the hand or any instrument to draw out the property through an aperture made by the offender for that purpose." The court in defining breaking substantially followed this statute, but correctly gave, as is clearly embraced by this statute, that breaking included "the opening of a door that is shut and locked."

In discussing this statute this court in Sparks v. State, 34 Texas Crim. Rep., 87, said: "We do not understand a daytime burglary to be circumscribed by these statutory illustrations, but that they are intended to illustrate that any force, however slight, if applied to the house, is used, and an entry is thus effected, the breaking and entry is complete; and in our opinion, if a door is shut and held in that position by friction of the door itself with the sill and facing,

and it is pushed, pulled, or shoved open, it is a sufficient breaking and force to constitute a daytime burglary, if the other essentials of the offense are present.'' There can be no question, to our minds, that the unlocking and opening, of a locked door and an entry thus effected, where the intent to steal is shown, or as in this case, an actual theft is shown, that it would be a breaking such as is clearly meant by this statute, even though the burglar, after thus effecting an entrance and committing the theft, in leaving should again close and lock the door and then leave it in exactly the same condition as before he entered.

The evidence in this case clearly and satisfactorily shows that Franklin, on the early morning of June 6, 1912, closed the blinds and shutters of his room, locked and closed the door and took the key with him; that in this thus closed room he left, among others, a suit of, his clothes; that some one unquestionably entered this room in some way during his absence and stole this suit of clothes. Appellant was shown to have been in possession of that identical suit of clothes about the middle of the evening of that day and that he took it to his mother's, where it seems he lived, and left them there, and that they were recovered therefrom by the officer the next day and thoroughly identified as the stolen suit of clothes. That at the time appellant was seen with the clothes in the middle of the evening of June 6th he was driving a white horse hitched to a surrey and had this suit of clothes in that surrey at the time; that that white horse and surrey belonged to Mrs. Butler for whom he worked, in the City of Austin, at that time and that he had the servant's room over the carriage room at Mrs. Butler's where the officer that same evening, after searching, found three keys,—one of which would unlock and lock Franklin's door as if it had been made for that purpose. No one else is shown to have had anything to do with this suit of clothes, although appellant said to the witness Levi to whom he tried to trade the clothes that same evening, after first claiming them as his own, upon being repeatedly charged by Levi that they did not belong to him, that a boy that worked with him gave them to him to sell; and although his sister testified that some negro boy about eighteen years old, whom she did not know, who stated to her his name was Willie Wilson or Willie Williams, who was not produced on the trial, stated to her he wanted a suit he let appellant have. The court specifically charged that if appellant purchased or obtained the said suit of clothes from another person, or the jury had a reasonable doubt of that to acquit appellant, and the jury found this issue against him. In addition to this and in addition to what the court gave on what is meant by breaking he gave at appellant's request, these two charges:

1. ''You are instructed that the mere possession of recently stolen property without evidence of a breaking, is not sufficient, under the law, to show burglary.'' 2. ''If you believe, beyond a reasonable doubt,

that some offense has been committed in this case, but have a reasonable doubt as to whether this defendant is guilty of burglary or of the offense or receiving stolen property, then, and in such event you will give the defendant the benefit of said reasonable doubt, and find the defendant 'not guilty' and so say by your verdict.''

We think the evidence was amply and clearly sufficient to show that a breaking was made by the unlocking and opening of the door of Franklin's room. The evidence unerringly and inevitably points to appellant as that person and it does not point to any other person.

There being no reversible error, the judgment will be affirmed.

*Affirmed.*